**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

ELIZABETH R. D.,                          )
                                          )
        **Plaintiff,**                    )
                                          )
vs.                                       )     **Case No. 20-CV-403-CVE-JFJ**
                                          )
KILOLO KIJAKAZI,[1]                       )
**Acting Commissioner of Social Security,**  )
                                          )
        **Defendant.**                   )

<u>**REPORT AND RECOMMENDATION**</u>

This matter is before the undersigned United States Magistrate Judge for a report and recommendation.  Plaintiff Elizabeth R. D. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled.  For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

I.     **General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History and the ALJ's Decision

Plaintiff, then a 48-year-old female, applied for Title II disability insurance benefits on February 6, 2013, alleging a disability onset date of January 29, 2013. R. 80, 610. Plaintiff claimed she was unable to work due to conditions including Type 2 diabetes, insulin dependence, neuropathy in hands and feet, and neck problems. *See* R. 259. Plaintiff's claim for benefits was denied at the initial and reconsideration levels, and an ALJ denied benefits on May 13, 2014. *See* R. 80-94, 138-162. The Appeals Council denied review, and Plaintiff appealed to the United States District Court for the Northern District of Oklahoma. R. 1-4, 730. The court reversed the ALJ's decision on November 23, 2016, based on the Commissioner's unopposed motion to remand the case for further administrative proceedings. R. 730-731. The Appeals Council vacated the ALJ's decision (R. 734-735), and a different ALJ conducted both an initial hearing on January 31, 2018, and a supplemental hearing on June 15, 2018. R. 640-684, 686-729. The ALJ issued a second

decision on July 31, 2018, again denying benefits and finding Plaintiff not disabled because she could perform other work existing in the national economy.  R. 610-631.  The Appeals Council declined to assume jurisdiction, and Plaintiff appealed.  R. 587-591; ECF No. 2.

In the second decision, the ALJ denied Plaintiff's request to reopen a prior, closed claim for benefits and amend the alleged onset date from January 29, 2013, to November 26, 2011.  R. 610-611.  The ALJ then found that Plaintiff's date last insured was December 31, 2014.  R. 613. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 29, 2013, through her date last insured of December 31, 2014.  *Id.*  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, status/post-fusion surgery at C5-6 and repair in 2012; bilateral carpal tunnel syndrome, status/post-repair (2009); bilateral cubital tunnel syndrome (2009), status/post-surgical repair; trigger finger with release surgery (2009); diabetes type II with some neuropathy (insulin dependent); obesity; and affective disorder/depression.  *Id.*  He found Plaintiff's impairments of upper arm and elbow pain, left ankle pain, cardiac condition, and right-sided/-handed neuropathy to be non-severe.  R. 614.  He further found her impairments of seizures and post-traumatic stress disorder ("PTSD") to be medically non-determinable.  *Id.*

At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 614-616.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had no limitation in the area of understanding, remembering, or applying information; moderate limitations in the area of interacting with others; and mild limitations in the two areas of (1) concentrating, persisting, or maintaining pace and (2) adapting or managing oneself.  R. 615-616.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a range of light work, with the following additional limitations:

> She could not climb ladders, ropes or scaffolds. She could occasionally stoop, crouch and kneel. She could occasionally crawl, balance, and climb ramps or stairs, and she could handle or finger frequently. She was able to reach overhead occasionally, bilaterally. She should have had no exposure to unprotected heights, open flames, dangerous machinery or equipment, or other hazardous conditions. Not all moving machinery is dangerous, such as machinery where moving parts are shielded. Due to mental impairments, she was capable of doing only unskilled work, consisting of simple, routine tasks with routine supervision that require only that she understand, remember and carry out simple instructions. She was able to relate to supervisors and coworkers on a superficial and work related basis and adapt to a work situation. She should have had only occasional contact with coworkers, but should not have had contact with the general public, meaning interaction with the general public should not have been not [sic] part of the job duties that in any context would be at most incidental and superficial.

R. 616-617. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 629. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled light work, such as Small Product Assembler, Electrical Accessory Assembler, and Inspector Packer. R. 629-630. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 630. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled from January 29, 2013, through December 31, 2014. *Id.*

## III.   Issues

Plaintiff raises three points of error in her challenge to the denial of benefits, which the undersigned re-organizes into four for clarity: (1) the ALJ and Appeals Council erred by denying Plaintiff's request to amend the alleged onset date and reopen a prior claim; (2) the ALJ's RFC is

unsupported by substantial evidence; (3) the ALJ improperly evaluated the medical source opinion evidence; and (4) the ALJ's consistency analysis was flawed.  ECF No. 14.

IV.     **Analysis**

A.      **ALJ Properly Denied Plaintiff's Request to Reopen Prior Claim, and Appeals Council Decision Is Not Subject to Review**

Plaintiff argues that the ALJ and the Appeals Council erred by denying her counsel's request to amend her onset date from January 29, 2013, to November 26, 2011.  As a basis for the proposed amendment, Plaintiff relied on a prior, closed claim for benefits that was filed in December 2011 and denied at the administrative level in March 2012.  Plaintiff sought to reopen this closed claim, because her counsel for that claim allegedly did not receive notice of the denial.

Plaintiff's counsel first requested orally that her prior, closed claim be reopened and her alleged onset date be amended to November 26, 2011, at the hearing held on April 1, 2014.  R. 116-119.  At that hearing, the ALJ and Plaintiff's counsel discussed possible grounds for reopening, but the ALJ did not make a decision on counsel's oral request.  *Id.*  In the first decision (prior to remand), the ALJ did not mention the request to reopen the prior claim, and the Appeals Council also did not address the issue.  R. 1-4, 83-98.

At the remand hearing held on January 31, 2018, Plaintiff's counsel again requested orally that Plaintiff's prior application be reopened, and the ALJ told counsel to make the request in writing.  R. 689-691.  On February 1, 2018, Plaintiff's counsel filed a written request to reopen the prior decision.  R. 912.  The request letter stated that Plaintiff had filed three disability applications.  The first application was denied on November 25, 2011, and the second application, filed on December 11, 2011, was denied at the administrative level on March 30, 2012.  Counsel alleged in the letter that Plaintiff had retained different counsel at the time she filed the second application, and that prior counsel never received a notice of the denial and never appealed that unfavorable

decision.  *Id.*  Plaintiff's current counsel filed the third application on February 6, 2013, alleging an onset date of January 29, 2013.  *Id.*  Based on this background, Plaintiff's counsel requested that the second application be reopened and the alleged onset date of disability be amended to November 26, 2011, which was one day after the unfavorable decision in Plaintiff's first application for benefits.  *Id.*

In the remand decision, the ALJ summarized and considered Plaintiff's counsel's request, but he denied the motion.  R. 610-611.  The ALJ explained that the evidence in the claim file suggested that Plaintiff's current attorneys, all part of the same firm, knew that there had been a prior, closed claim.  R. 610 (citing R. 381-386, 762-800).  The ALJ noted that members of Plaintiff's counsel's firm in the current, third claim had been retained in early 2013.  *Id.*  Further, he noted that the selection of an onset date can be a strategic determination.  *Id.*  He explained that members of Plaintiff's counsel's firm "were or could have been well acquainted with the date of the decision in the first claim and were her attorneys in the third claim," and Plaintiff "had the benefit of well-informed and highly trained counsel as of or shortly after she filed her third claim." R. 610-611 (citing R. 163, 170).  The ALJ stated that the assertion of an onset date "should be based on an onset of disability date and facts to support it, not on the existence of a prior claim," and "[n]othing precluded the claimant from asserting an earlier date when she filed the third claim."  R. 611.  The ALJ noted that Plaintiff did not allege in her request to reopen that a prior onset date was more factually appropriate, that this date was unknown to her, or that she was precluded from asserting an earlier onset date at the time she filed her current, third claim.  *Id.*

On appeal to the Appeals Council, Plaintiff's counsel again sought to reopen the prior application to amend the alleged onset date.  R. 893-895.  The Appeals Council rejected the request, noting that the decision to reopen is discretionary and that the ALJ "may," but is not required to, reopen a final determination.  R. 587 (citing 20 C.F.R. § 404.987).  The Appeals

Council found that the ALJ had provided a detailed explanation for denying the request to reopen; the ALJ had addressed the entire period at issue, including evidence pre-dating Plaintiff's January 29, 2013, alleged onset date; and the ALJ had provided sufficient reasons for denying the request to amend the alleged onset date and reopen the prior claim.  R. 587-588.  The Appeals Council declined to assume jurisdiction over Plaintiff's case.  R. 587.

Plaintiff now appeals both the ALJ's determination and the Appeals Council's decision declining to assume jurisdiction, as they relate to the alleged onset date.

### 1.    ALJ

Although Plaintiff's argument is muddled, Plaintiff appears to contend that the ALJ's decision not to reopen the prior claim amounted to an abuse of discretion, because it was unsupported by appropriate reasoning.  ECF No. 14 at 13-14.  The undersigned rejects this argument.  The relevant regulation provides that a decision to reopen a prior claim is discretionary. *See* 20 C.F.R. § 404.988 (stating that a prior determination "*may* be reopened") (emphasis added). The ALJ thoroughly explained his reasons for rejecting Plaintiff's counsel's requests to reopen the second claim and amend the alleged onset date.  R. 610-611.  As the ALJ stated, members of Plaintiff's counsel's firm have represented Plaintiff since at least Spring 2013, which was shortly after she filed the third claim on February 6, 2013.  *See* R. 163 (attorney fee agreement between Plaintiff's counsel's firm and Plaintiff, dated March 21, 2013); R. 170 (form appointing Lisa J. McNair Palmer, attorney with Plaintiff's counsel's firm, as Plaintiff's representative, dated May 17, 2013).  Nothing prevented Plaintiff or her counsel from asserting an earlier onset date at that time.  While Plaintiff's counsel orally requested to amend the onset date at the April 1, 2014, hearing, the ALJ did not make a determination on the request.  R. 116-119, 83-98.  It appears Plaintiff's counsel did not pursue this issue further, until the case was remanded from the District Court and Appeals Council in 2018.  R. 610-611, 912.

Further, as the ALJ explained, Plaintiff's counsel offers no medical reason for amending the onset date to November 26, 2011, and it appears that the proposed amended onset date corresponds only to the denial of Plaintiff's first claim for benefits on November 25, 2011.  As support for the amended date, Plaintiff explains only that she stopped working in 2009, and that she would receive benefits for a much shorter period of time if she were limited to the later onset date of January 29, 2013.  ECF No. 14 at 14.

The undersigned identifies no abuse of discretion in the ALJ's decision not to reopen the prior claim, as his explanation was sound and supported by the record.  Even if, as Plaintiff contends, her current counsel was unaware of the previous denial of the second claim, counsel had ample opportunity beginning in early 2013 to allege an onset date that corresponded more appropriately with her alleged disability date.  As the ALJ stated, the selection of the onset date can be strategic, and the ALJ was within his discretion to deny counsel's request to reopen the prior claim and amend the onset date, when the case had been pending for almost five years.

### 2.    Appeals Council

Plaintiff also appears to argue that the Appeals Council improperly found the ALJ's decision to be properly within his discretion, and the Appeals Council's determination violated Plaintiff's constitutional due process rights under the Fifth and Fourteenth Amendments.  ECF No. 14 at 14.  However, this Court lacks the authority to review the Appeals Council's determination, because the "final decision" in this case was the ALJ's decision, and the Appeals Council declined to assume jurisdiction over Plaintiff's case.  R. 587 (notice from Appeals Council dated June 9, 2020, stating that "[w]e have found no reason under our rules to assume jurisdiction").  *See Califano v. Sanders*, 430 U.S. 99, 108 (1977) (explaining that the Social Security Act "limits judicial review to a particular type of agency action, a 'final decision of the [Commissioner of Social Security] made after hearing.'") (quoting former 42 U.S.C. § 405(b), currently 42 U.S.C. §

405(g)); 20 C.F.R. § 404.972 (stating that "[t]he dismissal of a request for Appeals Council review is binding and not subject to further review").

In the reply brief, Plaintiff argues that the Appeals Council's refusal to assume jurisdiction amounts to a "final decision" subject to judicial review, citing *Smith v. Berryhill*, 139 S. Ct. 1765, 1769 (2019). Plaintiff misreads the scope of *Smith*. In *Smith*, the Supreme Court held that the Appeals Council's dismissal of a request for review on untimeliness grounds, after the claimant had received an ALJ hearing, qualified as a "final decision" subject to judicial review. *Id.* at 1772-74. The Court noted that a dismissal for untimeliness is relatively rare, and its holding was therefore "unlikely" to risk a flood of litigation. *Id.* at 1778. The undersigned therefore reads *Smith's* holding as a narrow one, not applicable to the Appeals Council's decision here not to assume jurisdiction on merits grounds. Plaintiff does not expand on her argument in the reply brief, relying solely on a citation to *Smith*. To the extent Plaintiff proposes expanding *Smith* beyond its narrow holding to encompass the situation here, the undersigned rejects the proposal.

### B.      ALJ's Analysis of Physical Impairments Was Proper

Plaintiff argues the ALJ committed reversible error by failing to account for limitations in her upper and lower extremities, as well as limitations related to her obesity. Plaintiff also raises issues related to alleged pain and fatigue, which are addressed below in Part IV.D.

#### 1.      Upper Extremities

Plaintiff argues she experienced greater limitations in her hands and arms than the ALJ identified in the decision. In support, she points to findings of "glove and stocking hypesthesia" bilaterally in her hands up to her distal forearm, and numbness and tingling in the fingers attributable to cervical nerve root compression at C6-C7, all of which predate the January 2013 alleged onset date by at least eight months. R. 359 (April 2011 orthopedic visit), R. 367, 940 (July 2011 EMG/nerve conduction study), R. 353 (August 2011 orthopedic assessment), R. 397 (March

2012 neurosurgical consult), R. 493-494 (May 2012 orthopedic evaluation), R. 396 (June 2012 follow-up visit post cervical fusion surgery). She also points to her own reports of issues with her hands and fingers, as well as medical expert testimony at the January 2018 hearing from Ronald Devere, M.D., regarding evidence of neuropathy. R. 315 (June 2013 function report), R. 788 (Plaintiff's April 2014 hearing testimony), R. 701 (Dr. Devere's January 2018 hearing testimony). Finally, she points to treatment notes in 2015 listing carpal tunnel syndrome as a chronic problem. R. 1078 (July 2015 treatment notes), R. 1048 (November 2015 treatment notes). Based on these records, which Plaintiff contends the ALJ "ignored," Plaintiff argues it would be impossible for her to perform "frequent" fingering, as the ALJ found in the RFC.

Plaintiff's argument is unpersuasive. The ALJ found that Plaintiff's degenerative disc disease of the cervical spine, status post-fusion and repair surgery (2012); bilateral carpal tunnel syndrome, status post-repair (2009); bilateral cubital tunnel syndrome, status post-surgical repair (2009); and trigger finger with release surgery (2009) were all severe impairments. R. 613. He addressed Plaintiff's claim of a greater extreme of limitation in her upper extremities but found that her prior surgeries for cervical spine problems and carpal tunnel syndrome had been successful. R. 614. The ALJ stated that, in August 2012, Plaintiff's spine surgeon noted her motor strength had been improving, she had made good progress from her surgery, and she was safe to work with a 50-pound weight restriction in regard to her cervical spine. R. 614 (citing R. 393). The ALJ noted that, after September 2012, Plaintiff no longer saw her spine surgeon or her pain management doctor, and she reported very little by way of treatment with her primary care physician or providers. R. 614 (citing R. 434). The ALJ further noted that primary care records after the alleged onset date showed no limitation in grip strength, lack of sensation, or other limitation of the upper extremities. *Id.* (citing R. 479) (April 2013 exam showing normal bilateral upper extremity exam despite Plaintiff's claim of locking right fourth metacarpal joint space).

In discussing the RFC, which included a restriction of frequent handling or fingering, the ALJ also discussed an October 2013 exam. R. 621-622 (citing R. 545-546). At that exam, Plaintiff had normal upper extremity reflexes and sensation, no cervical spine tenderness or spasm, with only cervical muscle tightness observed and no other abnormal findings. *Id.* (citing R. 545-546). Recommendation at that examination was to increase moderate exercise. R. 622 (citing R. 546). Later in the decision, the ALJ stated that Plaintiff's allegation of inability to use her arms or turn her neck were not fully supported in the record. R. 628. Among other evidence, the ALJ noted that Plaintiff had alleged nerve damage in her upper extremity yet was able to bowl, which required using her right dominant hand and arm. *Id.* The ALJ further noted that, during the relevant period, Plaintiff had normal neck range of motion. R. 620 (citing R. 1253) (July 2014 physical exam).

The undersigned finds that the ALJ adequately addressed Plaintiff's issues with her upper extremities and appropriately concluded that those issues were resolved by the alleged onset date of January 29, 2013. Plaintiff's citations to treatment records either predate that alleged onset date by at least eight months (R. 353, 359, 367, 396, 397, 493-494, 940) (treatment records dated between April 2011 and May 2012) or simply list carpal tunnel syndrome as a chronic problem, without any associated complaints or functional limitations (R. 1048, 1078) (2015 primary care treatment notes). In fact, at both of the 2015 primary care visits she cites, Plaintiff denied any numbness or tingling of the distal extremities. R. 1078. Plaintiff further cites to her own testimony and function reports regarding issues with her hands and fingers (R. 315, 788), but she fails to point to contemporaneous support in the medical record. As explained below, the ALJ appropriately found that Plaintiff's allegations of pain related to her upper extremity and cervical spine problems were not entirely consistent with the medical record. R. 625, 629.

As for Dr. Devere's testimony, Plaintiff alleges that the ALJ "ignored favorable evidence without a proper explanation." ECF No. 14 at 6. However, the ALJ summarized Dr. Devere's

testimony regarding evidence of neuropathy in detail.  R. 627.  Dr. Devere testified that Plaintiff had a mild sensory neuropathy, and the record showed numbness and tingling.  R. 701.  He opined, however, that neuropathy was not a medically severe impairment.  *Id.*  The ALJ found Dr. Devere's opinion to be "well regarded" and he assigned Dr. Devere's testimony "some weight," though he gave Dr. Devere's conclusions about the limitations "little weight."  R. 627.  Plaintiff does not explain what part of Dr. Devere's testimony was "ignored," and the undersigned finds the ALJ appropriately considered Dr. Devere's testimony.

The undersigned identifies no error in the ALJ's analysis of Plaintiff's upper extremity issues.  As a result, the ALJ was not required to eliminate any of the step-five jobs from consideration based on their fingering requirements.  *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (finding that a hypothetical question to VE must contain "only . . . those impairments borne out by the evidentiary record").

### 2. Lower Extremities

Plaintiff argues the ALJ committed reversible error by failing to account for her bilateral foot neuropathy and ankle surgery in the RFC.  In support, Plaintiff points to evidence of her previous left foot surgery and her use of a prescription walker.  R. 1166 (December 2012 referral for left heel pain), R. 576 (April 2013 mental therapy record, noting that Plaintiff stated her diabetic doctor had told her to use a walker due to neuropathy pain), R. 320 (June 2013 function report stating Plaintiff used a prescribed walker as needed), R. 329 (June 2013 third-party function report stating Plaintiff had a prescribed walker), R. 512-513 (surgical records of January 2014 left Achilles tendon lengthening), R. 102 (April 2014 hearing record indicating Plaintiff had a walker) (duplicated at R. 765), R. 113 (Plaintiff's testimony at April 2014 hearing that she had a prescribed walker as a result of Achilles tendon surgery) (duplicated at R. 777).

Plaintiff argues that, in light of the Appeals Council's remand order for the ALJ to consider records discussing Plaintiff's left ankle and neuropathy, the ALJ did not adequately explain how neuropathy and the left ankle surgeries would impact Plaintiff's ability to balance.  *See* R. 734 (Appeals Council remand order), R. 517-526 (December 2013 to February 2014 podiatry records). Plaintiff argues she would be unable to maintain "occasional" balance, as the ALJ stated in the RFC, because she would need to use a walker, would have foot pain, and would be unable to carry ledgers.  *See* R. 583 (August 2014 podiatry visit, at which Plaintiff complained of pain, and podiatrist advised discontinuing use of walking boot, continuing home therapy, and taking Norco), R. 581-582 (September 2014 podiatry visit, at which Plaintiff complained of pain, especially when trying to bowl, and podiatrist advised continuing home therapy and Norco), R. 13-14 (January 2015 podiatry visit, at which Plaintiff complained of foot pain), R. 1169 (April 2015 podiatry records, at which Plaintiff complained of left foot pain, especially when trying to bowl, and burning in both feet, and at which she was given a left foot steroid injection), R. 1266 (June 2015 podiatry record, at which Plaintiff complained of burning, especially when trying to bowl, and podiatrist advised continuing home therapy and increasing exercise on treadmill), R. 1256 (March 2016 podiatry record, at which Plaintiff complained of burning, especially when trying to bowl, and inability to stand on the ball of her left foot, and Plaintiff received steroid injection in left foot), R. 1135 (September 2016 lower back x-ray showing degenerative changes), R. 1255 (October 2016 podiatry record, at which Plaintiff complained of left ankle pain while bowling).  She further argues the VE was prevented at the hearing from testifying in any detail as to limitations resulting from Plaintiff's foot and ankle problems.  R. 681 (June 2018 hearing record of VE cross-examination).

Plaintiff's arguments are unpersuasive.  At step two, the ALJ considered Plaintiff's left ankle condition, which was reportedly significant when she bowled, and he found it to be a non-

severe impairment.  R. 614.  The ALJ referred to the medical expert testimony of Robert Sklaroff, M.D., that the left Achilles tendon issue was not significant.  *Id.  See* R. 659-661 (Dr. Sklaroff's testimony that the left Achilles tendon issue was resolved with surgery, that her remaining pain could be sufficiently treated with pain medication, that he did not think there were any ongoing motor issues, and that the Achilles tendon issue did not have a long, significant impact).  In discussing the RFC, the ALJ thoroughly documented Plaintiff's history of problems with her left foot and Achilles heel, and he documented her January 2014 Achilles tendon lengthening surgery and recovery thereafter.  R. 620-621.  As the ALJ explained, the surgery reportedly went well, and she was advised to use a walking boot and gradually discontinue crutches six weeks post-surgery. R. 621 (citing R. 519).

The ALJ noted Plaintiff's ongoing foot pain, especially when trying to bowl, and he noted that throughout 2014, she was advised to continue home therapy and take a narcotic pain reliever. *Id.* (citing R. 581-586).  The ALJ noted that, by November 2014, Plaintiff was complaining of burning in both feet, which the podiatrist reported as diabetic neuropathy in both feet, based on Plaintiff's report.  R. 1177.  Plaintiff's podiatrist referred her to pain management in November 2014, and he referred Plaintiff to a neurologist for evaluation of her foot pain in December 2014. R. 621 (citing R. 1172, 1175, 1177).  Later in the decision, the ALJ also noted that Plaintiff continued to complain about pain in the left lower extremity following her 2014 surgery, and it appeared that her functioning had not significantly changed, that her post-surgical activity had remained essentially the same, and that her left leg became exacerbated when bowling, "a non-work and sporting activity."  R. 629.

Despite Plaintiff's allegation otherwise, the ALJ plainly considered the podiatry records that the Appeals Council ordered the ALJ to consider on remand.  R. 620-621, 625.  *See* R. 734 (Appeals Council order remanding case to ALJ and ordering ALJ to consider podiatry records,

among other records); R. 610 (ALJ noted that previous order had omitted discussion of several exhibits). *See generally Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1179 (10th Cir. 2020) ("When the Appeals Council remands a case with instructions, those instructions become legal requirements with which the ALJ is bound to comply").

While the ALJ did not specifically discuss Plaintiff's use of a walker at the April 2014 hearing, he noted that Plaintiff had undergone Achilles tendon surgery in January 2014 and had been using crutches and a walking boot as she recovered. R. 621. The ALJ also noted throughout the decision that Plaintiff was able to bowl in 2014. R. 621. Bowling is a sporting activity that would require some balancing while holding and throwing a bowling ball. *See* R. 626 (ALJ stated that it was "inconsistent for a right-hand-dominant individual with severe pain in the wrist and hand to voluntarily hold and throw a ten pound ball down a bowling lane"); R. 627 (noting that bowling "is an athletic endeavor that requires the use of the legs in a lunge position").

Plaintiff points to no evidence showing that she was unable to balance for an extended period of time during the relevant period of January 2013 to December 2014. Although Plaintiff was recovering from her January 2014 foot surgery during that period, her podiatrist advised discontinuing the walking boot by August 2014, while continuing pain medication and home therapy. R. 583. *Cf.* Social Security Ruling ("SSR") 96-9p (explaining that, for a finding that a hand-held assistive device is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed").

Finally, Plaintiff's complaint that her counsel was unable to cross-examine the VE is unavailing. The ALJ clarified with the VE that "balancing" is addressed in the DOT and her testimony was limited to explaining whether someone limited to "occasional balancing" could perform a particular job or not, as stated in the DOT. R. 681. The ALJ appropriately limited the

VE's testimony without permitting her to opine on the "technical meaning of balancing." *Id.* Plaintiff offers nothing in the record or other authority to indicate that the ALJ was required to permit further probing of the meaning of "balancing" as the VE understood it.

### 3.    Obesity

Plaintiff argues the ALJ committed reversible error by failing to properly assess obesity when determining Plaintiff's RFC.  An ALJ must consider the effects of obesity as part of the RFC determination.  *See* SSR 02-01p, 2000 WL 628049 (Sept. 12, 2002).[2]  Obesity can affect "exertional, postural, and social functions," and "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.*  Accordingly, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and the ALJ "will evaluate each case based on the information in the case record." *Id.*  The obesity consideration may be "subsumed within the discussion of [a claimant's] other medical conditions." *Razo v. Colvin*, 663 F. App'x 710, 716 (10th Cir. 2016).

Here, the ALJ found obesity was a severe impairment at step two.  R. 613.  At step three, the ALJ explained that he had evaluated Plaintiff's obesity under the criteria set forth in SSR 02-01p.  R. 615.  He concluded there was no indication that Plaintiff's obesity, alone or in combination with any other impairment, had given rise to a condition of listing-level severity. *Id.*  In the RFC discussion, the ALJ noted that, in July 2014, Plaintiff's physician had assessed her with obesity, had noted she was fairly compliant with diet and exercise, and had advised her to optimize her diet and exercise regimen.  R. 621 (citing R. 1249-1250).  The ALJ also noted she was treated for

---

[2] SSR 02-01p was rescinded effective May 20, 2019.  However, a reviewing court should apply SSR 02-01p if it remained in effect at the time of the ALJ's decision, as was the case here. *See* SSR 19-2p, 2019 WL 2374244, at *5 n.14 (May 20, 2019).

obesity in March 2014.  R. 622 (citing R. 534-558).  At that clinical visit, Plaintiff's physician noted she was fairly compliant with diet and exercise, and she denied a history of ulcers, calf pain, deformity, or other foot abnormalities.  *Id.* (citing R. 534).  She was counseled on diet and exercise. R. 535.

Plaintiff argues the ALJ should have specifically discussed how Plaintiff's obesity exacerbated her pain and fatigue.  ECF No. 14 at 10-11.  However, Plaintiff cites to no part of the record that would indicate her pain and fatigue were, in fact, exacerbated by obesity, or that Plaintiff experienced work-related functional limitations as a result of obesity that were not provided in the RFC.  *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 798 (10th Cir. 2013) (finding no error in ALJ's obesity analysis where "there is no record indication of any functional limitations from [the claimant's] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC").

The undersigned finds the ALJ's discussion of obesity was proper and sufficient.  The ALJ clearly acknowledged and addressed Plaintiff's obesity at steps two and three, and in discussing the RFC, but nonetheless found Plaintiff could perform a reduced range of light work.  The diagnosis of obesity does not necessarily translate into functional limitations.  *See Johnson v. Comm'r, SSA*, 764 F. App'x 754, 758 (10th Cir. 2019) (noting that SSR 02-01p "does not mandate any additional restrictions or a finding of disability" based on a claimant's obesity).  Plaintiff points to no conflict or lack of development in the record regarding obesity.  She also has not pointed to any medical evidence indicating her obesity resulted in functional limitations greater than those stated in the RFC.  *See Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (finding no error in obesity evaluation where ALJ found obesity severe and included specific postural limitations consistent with record but did not specifically mention obesity in RFC determination).

C.     **ALJ's Assessment of Medical Opinion Evidence Was Proper**

1.     **Worker's Compensation Evaluation**

Plaintiff argues the ALJ committed reversible error by failing to properly evaluate the opinions of worker's compensation examiner Kenneth Trinidad, D.O.  R. 505-509.  The ALJ must evaluate every medical opinion in the record, considering the factors outlined in the regulations. 20 C.F.R. § 404.1527(c).[3]  Upon review, the question for the reviewing court is whether the ALJ's decision contains specific reasons that make clear the weight assigned to the medical source opinion and the reasons for that weight.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").

In October 2012, Dr. Trinidad performed a physical exam in connection with Plaintiff's worker's compensation claim.  R. 505-509.  Dr. Trinidad noted Plaintiff's complaint of a history of injury that occurred on a cumulative basis during her six years of employment at a daycare center, which she left in October 2009.  R. 505.  He noted that Plaintiff developed pain and paresthesias in her hands, wrists, and elbows, and stiffness in her shoulders and neck.  *Id.*  Dr. Trinidad detailed Plaintiff's history of treatment, including surgery, for bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome of the elbows, tendinitis in the left hand, and neck problems.  R. 505-506.  He noted that she had previously received a Worker's Compensation Court adjudication of partial disability in August 2010.  *Id.*  He stated that Plaintiff complained of fairly constant pain and spasm in her neck that was worsened with stooping and lifting; she had severe

---

[3] The relevant regulations list six factors the ALJ should consider when weighing a medical opinion: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship; (3) supportability of the opinion with relevant evidence; (4) consistency of the opinion with the record as a whole; (5) specialization of the medical source; and (6) any other factors that may support or contradict the opinion.  20 C.F.R. § 404.1527(c).

spasm in the thoracic area and into the shoulder blades worse on the right as compared to the left; and she had pain and paresthesias into her right arm and weakness in the right arm.  R. 506.

Dr. Trinidad's physical examination revealed weakness throughout the dominant right arm; tenderness and spasm in the cervical spine bilaterally and limited range of motion; tenderness and spasm in the thoracic spine with trigger points; symmetric and down-going deep tendon reflexes; and weakness in the right arm in a C5 and C6 distribution from the radiculopathy.  R. 507.  He opined that Plaintiff's conditions had achieved maximum medical recovery.  *Id.*  He rated her cervical spine impairment with associated right arm radiculopathy at 41 percent permanent partial impairment, and her thoracic spine impairment at 2 percent permanent partial impairment.  R. 508-509.

The ALJ summarized Dr. Trinidad's findings, and he gave Dr. Trinidad's opinion "little weight."  R. 619-620, 626.  The ALJ explained that, although Dr. Trinidad examined Plaintiff and reported his findings, his evaluation and the manner in which he expressed his opinion used a worker's compensation regimen, not one that is easily interpreted in the Social Security disability context.  R. 626.  The ALJ further explained that Dr. Trinidad's opinion was given in October 2012, and it did not reflect other evidence that showed improvement that was demonstrated in Plaintiff's choice of bowling as a hobby.  *Id.*  The ALJ explained the evidence showed Plaintiff used her right elbow, shoulder, hand, arm, and legs in a way that was inconsistent with Dr. Trinidad's statement that Plaintiff suffered from radiculopathy on the right side that may impair the use of her right hand/arm.  *Id.*  Specifically, it was "inconsistent for a right-hand-dominant individual with severe pain in the wrist and hand to voluntarily hold and throw a ten pound ball down a bowling lane."  *Id.*  See R. 134-135 (Plaintiff testified in 2014 she had a ten-pound bowling ball).  The ALJ additionally noted that the opinion was dated and from a time before the alleged

onset date, and Plaintiff's medical records showed little by way of ongoing problems with her upper extremities after August 2012. *Id.*

Plaintiff argues that the ALJ's evaluation of Dr. Trinidad's opinion was improper.  Her argument is vague and muddled, and she mistakenly identifies Dr. Trinidad as a "treating source." ECF No. 14 at 11-13.  Most specifically, Plaintiff takes issue with the ALJ's discussion of Dr. Trinidad's opinion regarding impairment of the right arm.  More generally, Plaintiff argues the ALJ "mostly ignored" Dr. Trinidad's opinion and failed to account for Dr. Trinidad's limitations in the RFC.  ECF No. 14 at 12.

The undersigned finds that the ALJ followed proper legal standards in evaluating Dr. Trinidad's opinions as they pertained to Plaintiff's physical capabilities, and the ALJ supported his rejection of Dr. Trinidad's opinion with substantial evidence.  The ALJ explained that he rejected Dr. Trinidad's opinion for several reasons.  First, the opinion was given in October 2012, nearly four months before the alleged onset date.  R. 626.  Second, Dr. Trinidad's opinion regarding right arm limitations did not account for Plaintiff's later improvement or her ability to bowl on a regular basis. *Id.*  Finally, while Dr. Trinidad examined Plaintiff, his opinion regarding percentages of impairment were not easily applied in the Social Security disability context. *Id.*

To the extent Plaintiff contends the ALJ "ignored" Dr. Trinidad's physical examination findings, the argument fails, as the ALJ summarized Dr. Trinidad's findings in detail.  R. 619-620. Moreover, Dr. Trinidad did not opine as to Plaintiff's lifting and carrying abilities, and Plaintiff's own spinal surgeon released her from care in August 2012 with a 50-pound weight restriction in regard to her cervical spine.  R. 619 (citing R. 393).  By October 2013, Plaintiff demonstrated no tenderness or spasm of the cervical spine, normal upper extremity sensation and strength, and the medical recommendation was to increase moderate exercise.  R. 621-622 (citing R. 545-546).  The undersigned identifies no error in the ALJ's assessment of Dr. Trinidad's opinion.  It is possible

to follow the ALJ's reasoning and determine that correct legal standards were applied regarding Dr. Trinidad's opinions. *See Keyes-Zachary*, 695 F.3d at 1166 (stating that the proper inquiry is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").

### 2. Medical Expert Testimony

#### a. Ronald Devere, M.D.

Plaintiff argues the ALJ committed reversible error by "arbitrarily ignor[ing]" the opinions of medical expert neurologist Dr. Devere, who testified at the first remand hearing held on January 31, 2018. ECF No. 14 at 13. *See* R. 696-713 (Dr. Devere's testimony). Dr. Devere examined the written record and opined that, neurologically, there was no evidence of any severe impairment. R. 698. Dr. Devere confined his opinion to neurological issues. R. 699. Dr. Devere opined that he believed Plaintiff's peripheral neuropathy was "very mild" and therefore not severe, and that there did not appear to be a neurological component to her cervical degenerative disease. R. 700-701. He further opined that Plaintiff's arm and elbow issues were not sufficient to constitute a severe impairment. R. 702. He refused to opine on Plaintiff's Achilles tendon issues, as they were podiatric and not neurological in nature. R. 702-703. He opined that Plaintiff would have a "safety concern in the job" based on side effects of her pain medication. R. 703-704. Despite finding no severe impairments, Dr. Devere nonetheless opined that, as a result of actual or potential medication side effects, as well as her pain, carpal tunnel syndrome, numbness, tingling, and neck and shoulder pain, Plaintiff would have certain work-related functional limitations. R. 704-707. The VE classified Dr. Devere's RFC as "less than sedentary." R. 718.

The ALJ then convened a second hearing in order to have a second medical expert testify as to Plaintiff's physical limitations. R. 640-684. At that second remand hearing, the ALJ

explained that he needed another expert because he found Dr. Devere's testimony "unusable."  R. 642.  The ALJ elaborated that Dr. Devere "didn't really know what a severe impairment was."  *Id.*

Despite his statements at the second hearing, the ALJ clearly did consider Dr. Devere's testimony in the written decision.  The ALJ summarized Dr. Devere's testimony, noting that Dr. Devere had opined there were no step-two "severe" impairments but had nevertheless opined Plaintiff "should be limited to a reduced range of light work because of the hazards of her medication."  R. 617-618.  The ALJ found that this testimony was "not of much value" in evaluating Plaintiff's claim, and that the ALJ had called a second medical expert to testify as a result.  R. 618.  Later in the decision, the ALJ summarized Dr. Devere's testimony in greater detail.  R. 627.  The ALJ concluded that Dr. Devere's testimony, limited to the neurological consequences of Plaintiff's condition, was given "some weight."  *Id.*  However, the ALJ gave Dr. Devere's conclusions about the limitations arising from those conditions "little weight."  *Id.*

Plaintiff argues in the opening brief that the ALJ "arbitrarily ignore[d]" Dr. Devere's testimony.  ECF No. 14 at 13.[4]  She points to the ALJ's statement at the second remand hearing indicating that Dr. Devere's testimony was "unusable."  R. 642.  Plaintiff argues that the ALJ should have considered Dr. Devere's RFC opinion, because Dr. Devere is "certified specifically in skills and techniques to provide impairment ratings and work evaluations based on pain."  ECF No. 14 at 13.  She further argues Dr. Devere's testimony is based on "objective observations from the record," and she contends his opinion is "consistent with [Plaintiff's] weakness, pain, paresthesia, and medication found on the record and to which Dr. Devere cited, *supra*."  Plaintiff

---

[4] Earlier in the opening brief, Plaintiff referred to Dr. Devere as a consultative examiner.  ECF No. 14 at 6.  This is incorrect.  *See* R. 696 (Dr. Devere testified he had never examined or treated Plaintiff).

does not cite to any part of the ALJ's actual discussion of Dr. Devere's testimony in the written decision.  R. 617-618, 627.

The undersigned rejects Plaintiff's argument, because the written decision shows that the ALJ considered, weighed, and certainly did not "ignore" Dr. Devere's testimony and opinions. Plaintiff's specific argument raised in the opening brief, that the ALJ "arbitrarily ignore[d]" Dr. Devere's testimony (ECF No. 14 at 13), is factually inaccurate.  Despite the ALJ's comments at the second remand hearing, it is clear from the written decision that the ALJ considered Dr. Devere's testimony and explained his reasons for weighing the testimony as he did.

In the reply brief, Plaintiff appears to adjust her argument, arguing the ALJ should have afforded Dr. Devere's opinion "greater weight," because Dr. Devere's findings and RFC opinion were "consistent with the medical record."  ECF No. 21 at 2.  Plaintiff cites to no part of the "medical record" to support this argument, nor does she acknowledge the ALJ's discussion of Dr. Devere's testimony in the written decision.  To the extent Plaintiff attempts to raise a broader argument about whether the ALJ properly weighed Dr. Devere's opinions, the undersigned rejects this argument.  Plaintiff does not even recognize that the ALJ extensively discussed Dr. Devere's testimony, much less attempt to show how the ALJ's discussion of the testimony amounts to error. Further, the ALJ provided valid reasons for assigning "little weight" to Dr. Devere's RFC opinion – namely, that Dr. Devere (1) refused to opine on matters outside of neurological conditions; (2) did not understand what a "severe" impairment was for purposes of disability evaluation; and (3) gave an RFC opinion with significant physical limitations, despite struggling to identify any "severe" impairments that would form the basis of those limitations.  R. 617-618, 627.  The ALJ's analysis did not rely on an alleged inconsistency with the medical record, as Plaintiff appears to contend.  Instead, the ALJ relied on an internal inconsistency in Dr. Devere's testimony, as well as Dr. Devere's refusal to opine on non-neurological issues, in finding the RFC opinion to have

little value.  The undersigned can follow the ALJ's reasoning and can determine that correct legal standards were applied.  *See Keyes-Zachary*, 695 F.3d at 1166.  Plaintiff fails to challenge any part of the ALJ's discussion in the written decision, and the undersigned will not develop an argument on her behalf.

### b.    Robert Sklaroff, M.D.

Plaintiff further takes issue with the ALJ's reliance on the testimony of the second medical expert, Dr. Sklaroff, who testified at the second remand hearing held on June 15, 2018.  R. 648-674.  Plaintiff argues the ALJ "arbitrarily provided great weight" to Dr. Sklaroff's testimony, even though Dr. Sklaroff has "no expertise in the matter" and "did not even consider [Plaintiff's] pain."  ECF No. 14 at 13.  The ALJ did not assign great weight to the entirety of Dr. Sklaroff's testimony, but he did give "great weight" to Dr. Sklaroff's opinion about Plaintiff's left lower extremity.  R. 627.

Plaintiff's  argument  is  not  persuasive.   Upon  questioning,  Dr. Sklaroff  testified  that Plaintiff's Achilles tendon issue did not meet the durational requirement of twelve months, it was not  a  persistent  issue,  and  it  was  treatable  by  medications  following  her  Achilles  tendon lengthening surgery.  R. 661, 671-672.  Dr. Sklaroff further testified that Plaintiff could have persistent pain after the Achilles tendon surgery, but he observed that her foot pain occurred especially when trying to bowl.  Dr. Sklaroff testified that Plaintiff was "engaging in significant physical activity which is provoking it," and "it may very well be that this pain is manageable by medications rather than being disabling."  R. 673.  He further testified that the foot pain was "not an impairment."  *Id.*

In discussing Dr. Sklaroff's testimony, the ALJ explained he was giving the testimony regarding the left lower extremity "great weight," because Plaintiff complained of lower extremity pain that was exacerbated when she bowled.  R. 627.  The ALJ noted that "[b]owling is an athletic

endeavor that requires the use of the legs in a lunge position," and Plaintiff "reported the use of pain medications to address this condition." *Id.  See* R. 13-14, 581-582, 583, 1135, 1169, 1255, 1256 (2014 to 2016 podiatry records).

Far from "arbitrarily" giving great weight to Dr. Sklaroff's opinion regarding the lower extremity, the ALJ explained his reasons, which were supported by the record.  Contrary to Plaintiff's argument, Dr. Sklaroff considered Plaintiff's pain and opined that it was not disabling but rather manageable by medications and exacerbated by a significant sporting activity.  R. 673.  As for Dr. Sklaroff's allegedly lacking "expertise in the matter," this argument is not explained, and the ALJ properly noted that Dr. Sklaroff is a board-certified internal medicine physician.  *See* R. 648.  While Dr. Sklaroff was not an orthopedist, Plaintiff offers no evidence to indicate Dr. Sklaroff was unqualified to render an opinion on orthopedic matters.  It is possible to follow the ALJ's reasoning and determine that correct legal standards were applied regarding Dr. Sklaroff's opinions.  *See Keyes-Zachary*, 695 F.3d at 1166 (stating that the proper inquiry is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").  The undersigned identifies no error in the ALJ's assessment of Dr. Sklaroff's opinion.

**D.**     **ALJ's Consistency Analysis Was Legally Proper and Supported by Substantial Evidence**

Plaintiff argues the ALJ's consistency analysis was improper.  In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.  SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016).  If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.*  If they are inconsistent, then the ALJ

"will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[5]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

Here, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record. R. 618. Under this specific heading and allegation of error, Plaintiff makes no specific complaint against the ALJ's analysis, relying instead on general

---

[5] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

propositions of law and references to other parts of the brief with a "*supra*" citation.  ECF No. 14 at 15.  Plaintiff's arguments in this section are insufficiently developed for the undersigned to review, and they are therefore waived.  *See Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) ("Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review.") (cleaned up).

In other sections of the brief, Plaintiff makes more specific references to pain and fatigue issues, which the undersigned addresses here.  Regarding pain, Plaintiff refers to her difficulty performing tasks, such as washing, concentrating, and walking, because of pain.  ECF No. 14 at 10 (citing R. 311, 319).  She also takes issue with the ALJ's characterization of her bowling activity as an "athletic endeavor" (R. 627) and she argues that her ability to bowl for two to three hours a week did not indicate she could perform sustained work activity (R. 135, 786-787).  ECF No. 14 at 13.  Regarding fatigue, Plaintiff cites her reports of medication-induced drowsiness (R. 111, 321, 336), as well as Dr. Devere's expert testimony that she would experience limitations as a result of pain medication (R. 705).

The undersigned finds that the ALJ's consistency analysis was proper.  The ALJ discussed Plaintiff's alleged pain in detail throughout the decision, including her back and foot pain.  618-622, 625.  The ALJ noted that Plaintiff's "primary emphasis" at the hearing appeared to be pain, and he noted that Plaintiff's counsel urged that Plaintiff's podiatry records were "presumably related" to Plaintiff's cervical back pain issues.  R. 625.  The ALJ concluded that a referral to a pain management physician and neurologist in the podiatry records (R. 1230) related only to Plaintiff's foot.  *Id.*  He found it was "not logical" to conclude that a podiatrist, whose practice is limited to the feet and lower leg, would be involved with a referral for a cervical spine problem. *Id.* (citing R. 1230).

28

Later in the decision, the ALJ concluded that Plaintiff's testimony and function reporting of extremes of physical limitations were unsupported in the record.  R. 628.  He noted that Plaintiff's alleged neck issues improved significantly after her neck surgery, and range of motion testing indicated little by way of limitation in range of motion.  *Id.  See* R. 545-546.  He noted that Plaintiff testified she could not drive because she could not turn her head, but she presented consistently alone at medical appointments and expressed no limitation in turning her neck to medical providers.  *Id.*  He also noted that, although she urged nerve damage in her upper extremity, she was able to bowl, which required using her right dominant hand and arm.  *Id.* Regarding her left lower extremity, the ALJ noted that she underwent surgery in early 2014 and, although she has continued to complain of pain, it appeared that her functioning had not significantly changed and that her left leg became exacerbated when bowling, "a non-work and sporting activity."  R. 629.  Nonetheless, the ALJ concluded that Plaintiff's pain "would be a distraction," and he limited her RFC to performing simple tasks as a result of pain.  R. 626.

The ALJ accounted for Plaintiff's own reports of limitations due to pain, and he concluded they were not entirely supported in the record.  He repeatedly noted her ability to bowl as an indication that her functioning was not as limited as alleged.  While Plaintiff disagrees that bowling is an "athletic endeavor," it is one that "requires the use of the legs in a lunge position" (R. 627), and requires use of the dominant hand to "voluntarily hold and throw a ten pound ball down a bowling lane" (R. 626).  It is proper for the ALJ to consider Plaintiff's activities, including her weekly bowling activities, in evaluating her complaints.  *See* 20 C.F.R. § 404.1529(c)(3)(i) (ALJ may consider a claimant's daily activities); SSR 16-3p, at *7 (stating that ALJ should consider claimant's daily activities as part of consistency analysis); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ appropriately found a claimant's description of her daily activities did not indicate significant limitations, where claimant could care for herself, her home, and her children,

and she could drive, shop, handle finances, garden, visit friends, and eat out).  Further, Plaintiff's failure to report issues with turning her neck to physicians was an appropriate consideration as part of the consistency analysis.  *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (finding claimant's failure to report symptoms to physician was appropriate factor to support credibility/consistency determination).  Contrary to Plaintiff's argument, the ALJ specifically accounted for Plaintiff's pain in the RFC by limiting her to simple tasks.  R. 626.

As for Plaintiff's allegations of medication-induced drowsiness, the ALJ noted Dr. Devere's expert testimony that her medication would create certain work-related hazards.  R. 617-618, 705.  Plaintiff does not specify how her pain medication would prevent her from performing work within her RFC, which included no exposure to unprotected heights, open flames, dangerous machinery or equipment, or other hazardous conditions, as well as only occasional stooping, crouching, and kneeling.  R. 616-617.  She also points to no medical records that would support her allegations of extreme drowsiness.  *See Barnett*, 231 F.3d at 690.  The undersigned identifies no error in the ALJ's analysis of Plaintiff's alleged drowsiness.

Plaintiff's consistency arguments are unavailing, and the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies SSR 16-3p.  Plaintiff only asks the Court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining that the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted).

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

**OBJECTION**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by January 26, 2022.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 12th day of January, 2022.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**