## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ELIZABETH R.D.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-CV-0403-CVE-JFJ** |
| | ) | |
| **KILOLO KAJAKAZI,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION AND ORDER</u>

Now before the Court is the report and recommendation (Dkt. # 22) of the magistrate judge recommending that the Court affirm defendant's decision denying plaintiff's claim for disability benefits. Plaintiff has filed a timely objection (Dkt. # 23) to the report and recommendation, and she raises three objections: (1) the administrative law judge (ALJ) should have reopened a prior claim; (2) the ALJ failed to properly evaluate the medical evidence in the record; (3) the ALJ erred in assessing plaintiff's consistency or credibility. Defendant responds that plaintiff is raising new arguments in her objection that were not presented to the magistrate judge, and defendant asks the Court to accept the report and recommendation. Dkt. # 24.

## I.

Plaintiff has filed three claims for disability benefits from the Social Security Administration. The first claim for disability benefits was filed on November 4, 2009, and she received an unfavorable decision from an ALJ on November 25, 2011. Dkt. # 12-11, at 16. On December 11, 2011, plaintiff filed a second application for disability benefits and she was represented by counsel,

and she alleged a date of onset of disability of November 26, 2011.  Dkt. # 12-8, at 25.  This claim

was denied and plaintiff did not appeal the adverse decision.  Id.  Plaintiff filed a third application

for disability benefits on February 6, 2013, and she alleged a date of onset of disability of January

29, 2013.  The ALJ issued a written decision denying plaintiff's claim for disability benefits, and

plaintiff asked the Appeals Council to review the denial.   Dkt. # 12-2, at 84-93.  The Appeals

Council declined to review the ALJ's decision, and plaintiff appealed the denial to federal district

court.  Elizabeth R.D. v. Social Security Administration, 16-CV-092-JED-FHM (N.D. Okla.).  The

case was remanded for further administrative proceedings at the request of the Commissioner, and

the case was reassigned to a new ALJ upon remand.  The ALJ held an initial and supplemental

hearing, and plaintiff was represented by counsel at both hearings.

At the initial hearing on January 31, 2018, plaintiff's counsel asked the ALJ to reopen a prior

claim for disability benefits that was filed on December 11, 2011.  Dkt. # 12-8, at 104.  The ALJ

asked plaintiff's counsel to make the request in writing, because the prior application was not

contained in the materials reviewed by the ALJ.  Id. at 105-06.  A medical expert, Ronald Devere,

M.D., testified at the hearing concerning plaintiff's physical impairments, and Dr. Devere stated that

he considered only whether plaintiff had a severe neurological impairment.  Id. at 113.  The ALJ

noted that plaintiff's physical impairments were in the nature of degenerative disc disease, diabetes,

and the residual effects of arm and elbow surgeries, but Dr. Devere refused to consider these

impairments because there was no neurological cause.  Id. at 114.  The ALJ questioned whether Dr.

Devere's testimony would be useful when it became clear that Dr. Devere was not using the term

"impairment" in a manner consistent with Social Security regulations.  Id. at 114-15.  For example,

Dr. Devere refused to state whether plaintiff had the impairment of cervical degenerative disc

2

disease, even though she exhibited symptoms of that impairment, because there was no evidence that the impairment was caused by a neurological problem. Id. at 116. Dr. Devere testified that none of the administrative listings related to neurological deficits were satisfied by the evidence in the record, but he did offer an opinion that plaintiff's medication would raise safety concerns that should be incorporated into her residual functional capacity. Id. at 118. However, Dr. Devere refused to state that the side effects of plaintiff's medication was a severe impairment, although he believed plaintiff's medication did cause certain limitations on her ability to work. Id. at 119-20. The ALJ explained to Dr. Devere that he could not simply include limitations in plaintiff's RFC without a medically determinable impairment, but Dr. Devere continued to state that he lacked sufficient proof to establish the medical cause of plaintiff's symptoms. Id. at 120-127.

The ALJ found that Dr. Devere's testimony was "unusable" due to his lack of familiarity with Social Security regulations and definitions, and the ALJ held a second hearing with a new medical expert, Robert Skarloff, M.D. Id. at 57-58. Dr. Skarloff noted that plaintiff was overweight and suffered from diabetes, and the medical evidence showed that plaintiff suffered from neuropathy associated with her diabetes. Id. at 73-74. Plaintiff previously had surgery to repair her left Achilles tendon, but Dr. Skarloff did not find any functional limitations associated with the surgery. Id. at 75. Dr. Skarloff stated that he did not find plaintiff's carpal tunnel syndrome, trigger finger disorder, or cervical spine issues to be severe, but the ALJ stated on the record that he was going to treat these as severe impairments during the relevant time period. Id. at 78-79. Plaintiff's counsel inquired whether post-surgical pain could cause additional physical limitations, and Dr. Skarloff testified that plaintiff's pain appeared to be well-controlled by medication. Id. at 84-87. Dr. Skarloff also believed that plaintiff was having physical pain primarily while engaging physical activities, such

as bowling, and the evidence did not suggest that plaintiff was generally suffering from disabling pain. Id. at 88.

The ALJ entered a written decision denying plaintiff's claim for disability benefits following the supplemental hearing. The ALJ rejected plaintiff's request to open a prior closed claim that was denied on March 30, 2012, because plaintiff's counsel received notice of the denial and had no credible explanation for taking further action on the claim. Id. at 25. The ALJ noted that plaintiff's request to reopen a prior claim could treated as a request to amend the date of onset of disability, but plaintiff had made no argument that a date other than January 29, 2013 was more factually appropriate. Id. at 27-28. In this application for disability benefits, the ALJ used the January 29, 2013 date of onset of disability and found that plaintiff did not engage in substantial gainful activity from that date to her date last insured of December 31, 2014. Id. at 28. The ALJ determined that plaintiff had the severe impairments of degenerative disc disease of the cervical spine, bilateral carpal and cubital tunnel syndrome, type II diabetes with some neuropathy, obesity, and depression. Id. However, the ALJ rejected plaintiff's request to impose limitations based on upper arm and elbow pain or a seizure disorder. Id. at 29. Plaintiff did not have an impairment or combination of impairments that met or exceeded any of the listings in 20 C.F.R. Part 404, Subpart P. Id. at 30. The ALJ determined that plaintiff had the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) with additional limitations. She could not climb ladders, ropes or scaffolds. She could occasionally stoop, crouch and kneel. She could occasionally crawl, balance, and climb ramps or stairs, and she could handle or finger frequently. She was able to reach overhead occasionally, bilaterally. She should have had no exposure to unprotected heights, open flames, dangerous machinery or equipment, or other hazardous conditions. Not all moving machinery is dangerous, such as machinery where moving parts are shielded. Due to mental impairments, she was capable of doing only unskilled work, consisting of simple, routine tasks with routine supervision that require only that she

4

understand, remember and carry out simple instructions.  She was able to relate to supervisors and coworkers on a superficial and work related basis and adapt to a work situation.  She should have had only occasional contact with coworkers, but should not have had contact with the general public, meaning interaction with the general public should not have been not [sic] part of the job duties that in any context would be at most incidental and superficial.

Id. at 31-32.  The ALJ summarized plaintiff's testimony and the medical evidence in the record.  As to Dr. Devere's testimony, the ALJ noted that Dr. Devere declined to state whether plaintiff had any severe impairments from a neurological perspective, and the ALJ found that Dr. Devere's testimony was "confused" and "not of much value."  Id. at 33.  The ALJ gave little weight to Dr. Skarloff's testimony to the extent that he opined that plaintiff had no severe impairment of the upper extremities, but he assigned great weight to Dr. Skarloff's testimony that plaintiff's lower extremity pain was controlled by medication.  Id. at 42.  The ALJ reviewed an examination report from October 2012 prepared by Kenneth Trinidad, D.O., in connection with a workers' compensation claim filed by plaintiff, and Dr. Trinidad noted that plaintiff had pain and tenderness in her right arm and she had a reduced range of motion in her cervical spine.  Id. at 35.  Dr. Trinidad applied the "whole man impairment" analysis and found that plaintiff had a 47 percent whole body impairment. Id.  Considering all of the medical evidence, the ALJ concluded that plaintiff was unable to perform her past relevant work, but there were jobs available in sufficient numbers in the national economy that plaintiff could perform with her RFC.  Id. at 44.  Therefore, the ALJ found that plaintiff was not disabled at step five of the analysis.

Plaintiff asked the Appeals Council to review the ALJ's decision, but the Appeals Council found no basis to review the ALJ's decision.  Id. at 2-6.  Plaintiff filed this case seeking judicial review of the denial of her claim, and the matter was referred to a magistrate judge for a report and

recommendation. The magistrate judge entered a report and recommendation (Dkt. # 22) recommending that the Court affirm defendant's decision to deny plaintiff's claim for disability benefits.

**II**.

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." The Court's task of reviewing the Commissioner's decision involves determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. "It is 'more than a scintilla, but less than a preponderance.'" Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Martinez v. Barnhart, 444 F.3d 1201, 1204 (10th Cir. 2006) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)).

A party's right to de novo review is subject to the Tenth Circuit's "firm-waiver rule," which provides that "a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." United States v. 2121 E. 30th St., 73 F.3d 1057, 1059-60 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." Id. at 1060. The Tenth Circuit has applied the firm-waiver rule when the

6

plaintiff's objection to the report and recommendation merely asserted a series of errors without explaining why the magistrate's reasoning was erroneous.  See Zumwalt v. Astrue, 220 F. App'x 770, 777-78 (10th Cir. 2007).[1]

### III.

Plaintiff has filed a timely objection (Dkt. # 23) to the report and recommendation raising three challenges to the ALJ's decision.  First, plaintiff argues that the ALJ should have reopened one of her prior claims, because her current claim is essentially the same as her prior claim and she has new evidence in support of her prior claim.  Dkt. # 23, at 2-3.  Second, plaintiff claims that the ALJ erred  in his evaluation of certain medical opinion evidence.  Id. at 4-8.  Finally, plaintiff argues that the ALJ failed to properly evaluate the consistency of plaintiff's testimony with the medical evidence in the administrative record.  Id. at 9-10.

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and therefore entitled to benefits.  See 20 C.F.R. § 404.1520(a)(4).  "The claimant bears the burden of establishing a prima facie case of disability at steps one through four."  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)).  "Step one requires the claimant to demonstrate 'that [she] is not presently engaged in substantial gainful activity.'"  Id. (quoting Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir.2005)).  "At step two, the claimant must show 'that [she] has a medically severe impairment or combination of impairments.'"  Id. (quoting Grogan, 399 F.3d at 1261).  "At step three, if a claimant

---

[1]    This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

can show that the impairment is equivalent to a listed impairment, [she] is presumed to be disabled and entitled to benefits." Id. (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988)). "If a claimant cannot meet a listing at step three, [she] continues to step four, which requires the claimant to show 'that the impairment or combination of impairments prevents him from performing his past work.'" Id. (quoting Grogan, 399 F.3d at 1261). If the claimant meets this burden, the analysis continues to step five, where the burden of proof shifts to the Commissioner to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given the claimant's age, education, and work experience. Id. (citing Hackett, 395 F.3d at 1171).

In reviewing the ALJ's decision, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ; the Court's task is to review the record to determine whether the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

**A.**

Plaintiff argues that the ALJ abused his discretion by refusing to reopen her claim filed in December 2011, because she presented "new and material" evidence that might have changed the outcome of her prior claim.  Dkt. # 23, at 3.  Plaintiff cites McGowan v. Harris, 666 F.2d 60 (4th Cir. 1981), to support her argument that the ALJ had the discretion to reopen a prior claim and consider new evidence in support of the prior claim.  Defendant responds that the Court lacks jurisdiction to even consider plaintiff's challenge to the ALJ's decision concerning the reopening of a prior claim, because an ALJ's decision concerning reopening a prior claim is not a "final decision" that is subject to judicial review.  Dkt. # 24, at 2.  The Tenth Circuit has clearly stated that "[a]bsent a colorable constitutional claim . . ., a district court does not have jurisdiction to review the Secretary's discretionary decision not to reopen an earlier adjudication."  Blair v. Apfel, 229 F.3d 1294 (10th Cir. 2000).  Plaintiff argues that the ALJ abused his discretion by refusing to reopen a prior claim, but this is not a colorable constitutional claim that would allow the Court to exercise jurisdiction over plaintiff's challenge to the ALJ's decision.  Plaintiff makes a vague argument that her claim for disability benefits was "erroneously terminated . . . without a hearing," but this argument is unsupported by any factual allegations or citations to the record.  Dkt. # 23, at 3.  In fact, plaintiff had multiple hearing before an ALJ on her claim for disability benefits, and plaintiff has not shown that there has been a denial of her right to procedural due process.  The Court finds no colorable constitutional claim that would support judicial review of plaintiff's argument that the ALJ improperly refused to reopen a prior closed claim.

Even if the Court had jurisdiction to consider plaintiff's argument, the Court does not find that the ALJ's decision to refuse to reopen plaintiff's prior claim was erroneous.  A prior determination by the Social Security Administration may be reopened within 12 months of the determination for any reason, or it may reopened for good cause if the request to reopen is made within four years of the determination. 20 C.F.R. § 404.988.  After four years, a prior determination may reopened for certain reasons specified in the regulation, but these reasons are relatively narrow. Id.  The prior determination in this case involves a claim that was filed in December 2011 and denied on March 30, 2012, and plaintiff first made an oral request to reopen the prior claim at a hearing before the ALJ on January 31, 2018.  Plaintiff argues that the ALJ should have found "good cause" to reopen her prior claim, but more than four years had elapsed since the denial of her prior claim and the "good cause" standard is inapplicable.  Instead, plaintiff would have had to show that one of the specific and narrow reasons provided by § 404.988(c) was applicable, and none of these bases for reopening a prior claim are applicable in this case.  Therefore, even if the Court had jurisdiction over this issue, plaintiff has not shown that the ALJ abused his discretion by refusing to reopen her December 2011 claim.

**B.**

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of Dr. Trinidad, Dr. Devere, and Dr. Skarloff.  Plaintiff's claim for disability benefits was filed on February 6, 2013, and the requirements of 20 C.F.R. § 404.1527 are applicable to plaintiff's claim.  See 20 C.F.R. § 404.1527 (specifying that this regulation applies to claims filed before March 27, 2017).  When determining whether a claimant is disabled, the ALJ must evaluate every medical opinion in the

record. 20 C.F.R. § 404.1527(b).  When evaluating a treating physician's opinion under § 404.1527, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." Brownrigg v. Berryhill, 688 F. App'x 542, 548 (10th Cir. Apr. 19, 2017) (quoting Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011)).  First, the ALJ must determine whether the medical opinion qualifies for "controlling weight."  Id.  A treating physician's medical opinion is given controlling weight if, on the issues of the nature and severity of the plaintiff's impairments, the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  § 404.1527(c)(2).  If the treating physician's opinion is entitled to controlling weight, the ALJ's analysis of the weight of that opinion is complete.  However, if the ALJ determines that the medical opinion is not entitled to controlling weight, or if the ALJ is evaluating a non-treating physician's opinion, the ALJ must move onto step two and apply the following factors to determine how much weight to give the medical opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003).  In this case, plaintiff does not argue that Dr. Trinidad, Dr. Devere, or Dr. Skarloff are treating physicians, but she asserts that the ALJ failed to give adequate weight to certain opinions offered by each of these medical sources.  Dkt. # 23, at 4-8.

11

**Dr. Trinidad**

Plaintiff argues that the ALJ should have given more weight to Dr. Trinidad's finding made during an October 2012 examination concerning plaintiff's physical impairments. At the time of Dr. Trinidad's examination, plaintiff was 47 years old and Dr. Trinidad was examining plaintiff to assess the severity of her alleged work-related injuries in connection with a workers' compensation claim. Plaintiff claimed that she had significant pain in her hands, wrists, elbows, and shoulders due to repetitive motions during her six years of employment at Wee Little Lambs Daycare, and testing revealed that plaintiff suffered from carpal tunnel syndrome in both wrists and cubital tunnel syndrome in both elbows. Dkt. # 12-7, at 155. Plaintiff had carpal tunnel and cubital tunnel release surgery in 2009, but she began to suffer from radicular symptoms in both arms and severe neck pain. Id. at 156. An MRI showed that plaintiff had a disc protrusion and small syrinx at C5 to C6, and she was also diagnosed with a cord contusion with myelomalacia. The Workers' Compensation Court referred plaintiff to a neurosurgeon, and a second MRI showed that plaintiff's spinal problems had worsened. Id. In June 2012, plaintiff had an anterior diskectomy and fusion procedure with the placement of a plate at C5 to C6. When she was examined by Dr. Trinidad in October 2012, plaintiff was complaining of constant pain and spasms in her neck, and she continued to have pain and weakness in her right arm. Id. Dr. Trinidad conducted a physical examination of plaintiff and found tenderness and spasms along plaintiff's cervical spine from C1 to C7. Id. at 157. He also assessed plaintiff as having tenderness and spasms in her thoracic area from T1 to T6, and he noted weakness in plaintiff's right arm. Id. For the purpose of a workers' compensation evaluation, he found that these impairments were permanent and he assessed a total impairment of 47 percent under the "whole man" analysis. Id. at 158.

The ALJ thoroughly summarized Dr. Trinidad's findings in his written decision, but the ALJ gave these findings little weight. Dkt. # 12-8, at 41. The ALJ explained an examination conducted in the context of the workers' compensation regime did not easily translate into findings that were useful for the Social Security disability analysis, and the examination was conducted before the alleged date of onset of disability. Id. The ALJ also noted that plaintiff's complaints of hand, wrist, and arm pain were inconsistent with plaintiff's hobby of bowling. Id. Plaintiff's more recent medical records did not show that plaintiff had ongoing problems with her upper extremities, and the ALJ did not find that any significant limitations on plaintiff's use of her right arm were warranted by Dr. Trinidad's opinions. As the magistrate judge noted, plaintiff's arguments on this issue are somewhat "vague and muddled," but it appears that plaintiff is asserting that the ALJ relied on the date of the examination and her hobby of bowling as reasons for giving little weight to Dr. Trinidad's findings. Dkt. # 22, at 21; Dkt. # 23, 4-5. The Court has reviewed Dr. Trinidad's findings and the ALJ's decision, and finds that the ALJ followed the proper legal standards when evaluating Dr. Trinidad's examination findings. The ALJ thoroughly summarized Dr. Trinidad's findings and correctly noted that findings specifically related to the workers' compensation regime were not applicable or helpful to a review of plaintiff's claim for Social Security disability benefits. It was also reasonable to give less weight to Dr. Trinidad's findings based on the date of the examination, because the examination took place before the alleged date of onset of disability of January 29, 2013, and many of the symptoms noted by Dr. Trinidad significantly improved following additional medical treatment after the examination. The Court does not find that the ALJ's evaluation of Dr. Trinidad's opinions was improper and this issue does not warrant remand for further proceedings.

**Dr. Devere**

Plaintiff does not argue that the ALJ wholly erred in his treatment of Dr. Devere's testimony, but plaintiff claims that the ALJ should have given greater weight to Dr. Devere's opinion that plaintiff's medication raised safety concerns that supported additional limitations that should have been included in her RFC. Dr. Devere reviewed the medical evidence in the administrative record and was asked to give opinion testimony concerning plaintiff's physical impairments. Dkt. # 12-8, at 111. Instead of offering opinions based on his general medical knowledge, Dr. Devere chose to offer opinions only as to whether plaintiff had any physical impairment with a neurological cause, and he refused to offer more general opinions concerning whether the evidence in the administrative record established the existence of a physical impairment. Id. at 113-116. Dr. Devere testified that plaintiff had no severe impairments with a neurological cause, but he did testify that plaintiff's medication and symptoms would cause certain safety concerns that would limit her ability to work. Id. at 113, 118, 119-21. The ALJ found that Dr. Devere's testimony had little value due to Dr. Devere's self-imposed limitation that he would consider only impairments with a neurological root, and he declined to give any weight to Dr. Devere's opinion that plaintiff had no severe impairments. Id. at 32-33. The ALJ also found that Dr. Devere's opinion that plaintiff's medication caused work-related restrictions was "not of much value" and "confused." Id. at 33.

Plaintiff is essentially arguing that the ALJ correctly refused to give any weight to Dr. Devere's opinion that she had no severe physical impairments, but the ALJ should have given greater weight to Dr. Devere's proposed work restrictions caused by her medication. Dkt. # 23, at 6. The Court finds that the ALJ reasonably gave little weight to Dr. Devere's opinion testimony, because

his narrow scope of review was of little use to the ALJ when formulating plaintiff's RFC.  The Court would likely have found that reversible error had occurred if the ALJ accepted Dr. Devere's testimony that plaintiff had no severe physical impairments, and the ALJ correctly declined to give significant weight to this aspect of Dr. Devere's testimony.  However, this also means that the ALJ had no reason to give greater weight to Dr. Devere's opinions concerning safety or workplace restrictions given the flawed basis for Dr. Devere's testimony.   Plaintiff is correct that a medical assessment should include nonexertional limitations in the RFC to the extent that a claimant's medication or symptoms raises safety concerns, and the ALJ included numerous restrictions in the RFC related to plaintiff's safety.  The ALJ restricted plaintiff from "exposure to unprotected heights, open flames, dangerous machinery or equipment, or other hazardous conditions," and these incorporate many of the restrictions noted by Dr. Devere.  Dkt. # 12-8, at 31, 119-123.  Therefore, the ALJ's alleged error with regard to Dr. Devere's opinions had little or no effect on the RFC included in the ALJ's written decision.  The Court does not find that the ALJ's treatment of Dr. Devere's testimony was improper under the applicable legal standards.

**Dr. Skarloff**

Plaintiff challenges the ALJ's treatment of Dr. Skarloff's testimony from the supplemental hearing that took place on June 15, 2018, but plaintiff fails to acknowledge that the ALJ gave little weight to Dr. Skarloff's opinions concerning plaintiff's upper extremities.  Dkt. # 12-8, at 42.  Plaintiff argues that the ALJ improperly gave greater weight to Dr. Skarloff's opinions that plaintiff had fewer restrictions associated with her use of her lower extremities, because there is evidence in the record that plaintiff continued to receive treatment for pain in her lower back and feet.  Dkt. #

23, at 8.  Dr. Skarloff testified that pain associated with plaintiff's Achilles tendon surgery did not qualify as a severe impairment due to lack of duration, and he noted that any pain in plaintiff's lower extremities was controlled by pain medication.  Id. at 76, 85-87.  Dr. Skarloff also opined that plaintiff seemed to have more significant pain when she engaged in certain physical activities, such as bowling, and that plaintiff could avoid unnecessary pain by declining to engage in physical activities that provoked her symptoms.  Id. at 88.  The ALJ found that Dr. Skarloff's opinions concerning plaintiff's lower extremities were supported by substantial evidence, and he accepted Dr. Skarloff's opinion that plaintiff's pain was well controlled by medication.  Id. at 42.

The ALJ's treatment of Dr. Skarloff's testimony was primarily favorable to plaintiff, and the Court finds no basis to remand the case based on the ALJ's decision to give greater weight to a limited aspect of Dr. Skarloff's testimony.  Plaintiff ignores the ALJ's thorough summary of the medical evidence in the administrative record, and there was little evidence that plaintiff was having significant pain in her feet or lower extremities.  Plaintiff notes certain medical records showing that she was referred for pain management treatment for her feet or lower back, but these records do not show that Dr. Skarloff's opinions are contrary to the weight of the medical evidence.  Dkt. # 23, at 8.  Instead, the medical evidence as a whole supports Dr. Skarloff's opinion that plaintiff's pain in her feet and lower extremities was well controlled by medication, and the ALJ reasonably accepted Dr. Skarloff's opinion that plaintiff's voluntary participation in activities such as bowling tended to provoke pain that was otherwise controlled by medication.  The ALJ's written decision shows that he did not blindly accept the opinions offered by Dr. Skarloff, and the ALJ rejected opinions that he did not find were supported by substantial evidence.  Dkt. # 12-8, at 42.  Plaintiff has not shown that

16

the ALJ erred in his treatment of the any of the medical opinion evidence, and the Court declines to remand the case for further proceedings on this issue.

## C.

Plaintiff argues that the ALJ failed to conduct a proper consistency or credibility analysis. Dkt. # 23, at 8-10.  In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.  SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016).  If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." Id. If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." Id. Factors the ALJ should consider include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication.  Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012); see also SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[2]

---

[2]     The Commissioner previously called this a "credibility" analysis rather than a "consistency" analysis. See SSR 16-3p (superseding SSR 96-7p).  In practice, however, there is little substantive difference between the two. See Brownrigg v. Berryhill, 688 F. App'x 542,545-46 (10th Cir. Apr. 19, 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive when making a consistency determination.

Consistency findings are "peculiarly the province of the finder of fact;" accordingly, courts should "not upset such determinations when supported by substantial evidence." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)). The ALJ "need not make a formalistic factor-by-factor recitation of the evidence," so long as he sets forth the specific evidence he relies on to support his consistency findings. Keyes-Zachary, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." Id.

Plaintiff reported that her primary complaints were significant pain that radiated from her neck and a reduced ability to use her hands and arms. Dkt. # 12-8, at 32. Plaintiff's primary leisure activities were watching television, spending time with her family, and playing with her grandchildren. Id. Plaintiff testified that the pain in her neck prevents her from driving, and she claims that she cannot work due to difficulty in finding childcare and problems with her hands and arms. Id. at 33. The ALJ summarized the medical evidence in the administrative record and found that plaintiff's testimony was not wholly consistent with the intensity, persistence, and limiting effects that she claimed her impairments caused. Id. Throughout the written decision, the ALJ referenced treatment records noting plaintiff's subjective complaints of pain and fatigue. Id. at 36-37, 40, 43.

Plaintiff has failed to show that the ALJ's consistency analysis was not supported by substantial evidence. Plaintiff claims that she "sporadically" bowled and the ALJ overemphasized this activity in an attempt discredit plaintiff's testimony. Dkt. # 23, at 9. Although the ALJ references bowling as an activity that contributes to plaintiff's pain, bowling is not referenced to such an extent that it can be considered a significant factor in the ALJ's decision, and the ALJ

appropriately focused on the medical evidence in his consistency findings. Plaintiff's challenge to the ALJ's consistency analysis also relies on the opinions of Dr. Trinidad and Dr. Devere, but the Court has already determined that the ALJ properly gave less weight to the specific opinions referenced by plaintiff. Id. at 10. Aside from these issues, plaintiff generally complains that the ALJ failed to make sufficient consistency findings or made improper conclusions that were unsupported by the evidence, but the Court can discern no additional arguments that are adequately preserved for judicial review. The Court finds no basis to remand the case for additional consistency findings, and the Commissioner's decision to deny plaintiff's claim for disability benefits is affirmed.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 22) is **accepted**, and the Commissioner's decision denying plaintiff's claim for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 29th day of September, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

19